UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROGER L. WILLIAMS,

                Plaintiff,

      v.

KELLIE WILLIAMS, *et al.*,


                Defendants.

**DECISION AND ORDER**
11-CV-246S

## I. INTRODUCTION

Plaintiff Roger L. Williams, proceeding *pro se*, brings this personal property and civil rights action against various defendants, alleging violations of the Fourth, Eighth, and Fourteenth Amendments.  Plaintiff's claims arise out of his divorced wife's alleged retention of marital and personal property that was not credited to his child support payments, resulting in the issuance of a property execution and restraining notice on his bank account.  Presently before this Court is Defendants Chautauqua County Family Court Judge Judith Claire, Support Magistrate Michael Bobseine, and former Support Magistrate Lawrence Zobel's (the "State Defendants") Motion to Dismiss, as well as Defendants Chautauqua County Department of Social Services[1] and Jerry D. Hyde's (the "Chautauqua Defendants") Motion to Dismiss.[2]  For the following reasons, Defendants' motions are

---

[1]The complaint identifies as a defendant the "Chautauqua County Support Collection."  On Defendants' representations, no such entity exists.  Considering the factual basis for Plaintiff's complaint, and Defendants' submissions, this Court will interpret Plaintiff's complaint as instead bringing a claim against the Chautauqua County Department of Social Services, a department of Chautauqua County, New York.  (See Steger Aff. ¶ 6, Docket No. 4-2.)

[2]In support of their motion, the Chautauqua Defendants filed the Affidavit of Betsy S. Steger, with Exhibits; the Affidavit of Jerry D. Hyde; a Memorandum of Law; and a Reply Memorandum.  (Docket Nos. 4, 5, 10.)  TheState Defendants similarly filed a Memorandum of Law; and a Reply Declaration.  (Docket Nos. 3, 9.)  In opposition to these motions, Plaintiff filed a Memorandum of Law; and two Reply

1

granted.   Further, this Court declines to exercise jurisdiction over Plaintiff's state law property claim against Defendant Kellie Williams.


## II. BACKGROUND

### A.    Facts

Plaintiff and Defendant, Kellie S. Williams, were divorced sometime prior to October 1, 2002.  (Comp., p. 4, Docket No. 1.)[3]  Ms. Williams allegedly convinced Plaintiff that she was entitled to sole legal possession over their marital property and evicted him under threats of arrest.  (Id.)  In addition to losing what Plaintiff considers his fair share of the marital assets, Plaintiff was also unable to recover the rest of his personal property from their formerly shared residence.  (Id.)  Plaintiff then sought to have the Chautauqua County Department of Social Services ("Social Services") credit the value of his personal belongings, left behind in Ms. Williams' possession, in satisfaction of his child support payments in arrears.  (Id.)  Social Services failed to act on his petitions, and on March 22, 2005 a property execution and restraining notice was sent to Plaintiff's bank.  (Comp., p.7; Steger Aff. ¶ 15.)  This notice was enforced against Plaintiff's Jamestown Metal Products Federal Credit Union account and resulted in two checks for the amount of $385.04 and $65 being forwarded by the bank to Social Services.  (Steger Aff. ¶ 15.)

### B.    Procedural History

Plaintiff commenced this action on March 21, 2011 by filing a complaint in the

---

memoranda.  (Docket Nos. 8, 11, 12.)

[3]Plaintiff's complaint is written on several pages of a standard form used for filing civil complaints in federal court.  Because the complaint's page numbers are not listed consecutively, all page citations in this Opinion refer to pages as they electronically appear on the docket.

United States District Court for the Western District of New York.  (Docket No. 1.)  The

Chautauqua Defendants filed their Motion to Dismiss on April 25, 2011 (Docket No. 4), and

the State Defendants followed suit with their own Motion to Dismiss on April 26, 2011

(Docket No. 6).  This Court issued a scheduling notice and Plaintiff filed a timely response

on May 5, 2011.  (Docket No. 8.)  State Defendants and the Chautauqua Defendants each

filed a reply on May 11, 2011.  (Docket Nos. 9, 10.)  The parties' briefs were deemed

submitted as of May 23, 2011.  Nevertheless, Plaintiff filed a reply to Defendants' reply

memoranda on May 25, 2011 (Docket No. 12) and sought leave to amend his Complaint

(Docket No. 11).  Because Plaintiff failed to comply with the requirements of Local Rule

15(a), Plaintiff's Motion to Amend was denied without prejudice.


### III. DISCUSSION

**A.      Standards of Review**

Defendants argue that Plaintiff's Complaint should be dismissed primarily for lack

of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to state a claim

upon which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[4]

**1.      Rule 12(b)(1)**

A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the

burden of establishing the existence of federal jurisdiction. Lujan v. Defenders of Wildlife,

---

[4]The Chautauqua Defendants also seek dismissal under Rules 12(b)(2), 12(b)(4), and 12(b)(5).

504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. (2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (alterations added).  The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits.  J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), cert. denied, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005).  Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction."  Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n. 6 (2d Cir. 2001).

## 2.    Rule 12(b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)  ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 129 S. Ct. at 1949.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  This examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 129 S. Ct. at 1950.  First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away.  See Iqbal, 129 S. Ct. at 1950.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether

they "plausibly give rise to an entitlement to relief." Id.

## B.    Application

Plaintiff's complaint, though difficult to decipher, appears to state three causes of action.[5]   One is a claim against the State and Chautauqua Defendants for repeatedly failing to credit the value of his half of the marital property, as well as the personal property left with Ms. Williams, towards his child support arrears and future child support payments. Plaintiff alleges that the State Defendants' dismissal of his petitions in New York Family Court were in contravention of New York law, and that the Chautauqua Defendants, through their attorney Jerry D. Hyde, wrongful defended these actions in bad faith.

Another claim alleges that the Chautauqua Defendants violated Plaintiff's constitutional rights by receiving checks from his federal credit union account when the amounts owed in arrears should have been covered by credit received for his marital and personal property.

Lastly, Plaintiff brings a property claim against his former wife for her retention of their, and his, property.

Both the State and Chautauqua Defendants argue that the claims against them should be dismissed pursuant to the *Rooker-Feldman* doctrine.  As discussed below, this Court agrees that it is precluded from exercising jurisdiction.   Further, additional, independent, grounds exist for granting Defendants' motions.

---

[5]As a *pro se* litigant, Plaintiff is entitled to broad consideration of his submissions.  Federal courts routinely read *pro se* submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  This court has considered Plaintiff's submissions accordingly.

### 1.    Rooker-Feldman Doctrine

Pursuant to the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over suits that are "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inciting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); see Rooker v. Fidelity trust Co., 263 U.S. 413, 414-15, 44 S. Ct. 149, 68 L. Ed. 362 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).  The *Rooker-Feldman* doctrine applies if: (1) the federal court plaintiff lost in state court; (2) the plaintiff's alleged injuries are caused by the state court judgment; (3) the plaintiff's claims invite the district court to review and reject that state court judgment; and (4) the state court judgment was rendered prior to the commencement of the district court proceedings.  Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

In the present case, Plaintiff's complaint states that he has petitioned Defendants repeatedly to credit the value of his half of the marital property, as well as the personal property left with Ms. Williams, towards his child support arrears and future child support payments.  Both the State and Chautauqua Defendants argue that dismissal under Rule 12(b)(1) and 12(b)(6) is appropriate under the *Rooker-Feldman* doctrine because Plaintiff seeks to effectuate a reversal of a state court judgment by bringing a civil rights action in this district.  Plaintiff resists this argument by asserting that the state courts rulings at issue dismissed his claims for lack of jurisdiction, and thus did not consider the merits of his claim.

7

To resolve Plaintiff's claims, and determine the applicability of the *Rooker-Feldman* doctrine, it is necessary to scrutinize the New York Family Court holdings concerning the substance of Plaintiff's petitions.  See, e.g., Velez v. Reynolds, 325 F. Supp. 2d 293, 309 (S.D.N.Y. 2004) (*Rooker-Feldman* doctrine requires that plaintiffs have full and fair opportunity to litigate issues in state court proceeding).  Plaintiff's complaint is devoid of the Family Court's specific holdings, other than that they occurred from December 16, 2002 to the time he filed his complaint.  Chautauqua Defendants, by contrast, have provided the affidavit of Betsy S. Steger summarizing the various proceedings before Judge Claire and Support Magistrate ("S.M.") Bobseine and former S.M. Zobel.  Additionally, attached to Steger's affidavit, are copies of 66 pages-worth of family court decisions chronicling Plaintiff's frequent, and colorful, appearances in that forum.  These submissions are properly before this Court and must be considered on a Rule 12(b)(1) motion.  See Attica Cent. Schs., 386 F.3d at 110; Robinson, 269 F.3d at 140 n. 6.

Reviewing the Family Court's decisions reveals that Plaintiff's petitions were indeed dismissed for lack of jurisdiction.  New York State's Family Court has limited jurisdiction over matters specifically enumerated in the New York State Constitution and relevant statutes.  King v. State Educ. Dep't, 182 F.3d 162, 163 (2d Cir. 1999).  In a decision dated July 25, 2005, S.M. David L. Turnbull dismissed a petition brought by Plaintiff seeking to modify a judgment of divorce because Social Services had not yet credited the value of his property.  (Steger Aff. 44.)[6]  The court found that "even if the proper petition was filed with this Court, the parties would need to proceed in Supreme Court to determine the value of

---

[6]The affidavit submitted by the Chautauqua Defendants includes various exhibits, but does not number the individual pages, nor create separate docket entries for them.  As with the complaint, this Court will refer to any exhibits included with the Steger Affidavit according to the page numbers as they electronically appear on the docket.

the former marital residence" and dismissed without prejudice.  (Id.)  The following year, a decision by S.M. Zobel again dismissed, without prejudice, Plaintiff's petition for similar relief because "Family Court has no jurisdiction over land or transfer of property" and because "Family Court has nothing to do with tax liens."  (Id. at 46.)  In a decision dated March 27, 2008 Plaintiff's petition was dismissed, this time with prejudice, and again addressed claims identical to those raised in Plaintiff's complaint.

> Mr. Williams claims that he is entitled to a credit against his arrears for the value of property that Kellie allegedly stole from him.  It was explained to Mr. Williams that such issue was not for this Court and that if he believed a theft occurred he should take it to the proper Court.  Mr. Williams also claimed that the Support Collection Unit was willfully and intentionally disobeying New York State law in their collection efforts.  Mr. Williams was advised that he needed to exhaust all administrative remedies before raising such issues with this Court.

(Id. at 53.)

A later decision by S.M. Timothy J. Cooper relied on this decision in applying the principle of *res judicata* to dismiss Plaintiff's renewed petition, which again alleged that his personal property, allegedly taken by Ms. Williams, should be applied to his child support arrears and future child support.  (Id. at 66.)

Although this Court agrees with Plaintiff that these decisions make clear that his petitions were dismissed, with prejudice, on jurisdictional grounds, whether this means the *Rooker-Feldman* doctrine does not apply is another question.  Some courts have found an exception under the doctrine where a plaintiff alleges that the state court lacked subject matter jurisdiction.  See Schmitt v. Schmitt, 324 F.3d 484, 487 (7th Cir. 2003) (noting void *ab initio Rooker-Feldman* exception might be appropriate in bankruptcy cases, but declining to apply it for violations of constitutional jurisdictional limits); In re James, 940

F.2d 46, 52 (3d Cir. 1991).  To date, the Second Circuit has not taken a position on this issue.  See In re Salem, 94 Fed. Appx. 24 (2d Cir. 2004) (noting circuit split on exceptions to *Rooker-Feldman* doctrine where underlying state court judgment was void for lack of jurisdiction, but declining to decide issue); cf., In re Agard, 444 B.R. 231, 243 (Bankr. E.D.N.Y. 2011) (no exception for judgment procured by fraud or default judgments).

Here, however, Plaintiff is not alleging that the state court improperly rendered a judgment by ruling on a matter over which it lacked subject matter jurisdiction.  Rather, Plaintiff is arguing the opposite– that the Family Court found it had no jurisdiction, when in actuality it could have heard his petitions.  Although this is a novel point, this Court is unpersuaded that it renders the *Rooker-Feldman* doctrine inapplicable.  The *Rooker-Feldman* doctrine blocks district courts from exercising jurisdiction over claims that are inextricably intertwined with state court determinations.  Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) (quoting Feldman, 460 U.S. at 482-83 n.16).  Although "where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker-Feldman*," if "adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment."  Id. at 128-29.  Applying the Second Circuit's four-pronged test for whether *Rooker-Feldman* precludes federal jurisdiction makes clear that such is the case here.

First, Plaintiff was a loser in a state court.  He sought to have the Family Court resolve his claims against Ms. Williams, but had those claims dismissed with prejudice.

Whether Plaintiff could bring his claims in a different state court is a matter separate from his desire to litigate in New York Family Court.   In finding that it lacked jurisdiction, the Family Court disagreed with Plaintiff's contention that the issues should be addressed in that forum, and not elsewhere.  Because the complaint now challenges the dismissal of the petitions by New York's Family Court as having been in violation of New York law, including the New York State Family Court Act, Plaintiff was a loser in the state court actions.

Second, Plaintiff's complaint asserts a claim on the ground that the Family Court's dismissal was in violation of New York law.  He has thus alleged an injury that is caused by and the result of the state court judgment.

As to the third prong, Plaintiff did have the opportunity to present his claims as evidenced by the support magistrates clear and concise summary of them.  However, Plaintiff does not appear to have litigated the merits of his substantive claims because the Family Court determined that it did not have jurisdiction.  Nevertheless, by entertaining Plaintiff's claims, this Court would still find itself in a position to find the state courts' rulings erroneous.  This is because, were this Court now to find the judges to have committed a constitutional violation in not exercising jurisdiction, it would, in essence, declare that the state court did have jurisdiction and it was error not to exercise that jurisdiction.  "This is precisely the result that the *Rooker-Feldman* doctrine seeks to avoid[.]"  Id. at 129.  Plaintiff had the opportunity to appeal the Family Court's decisions in an effort to establish jurisdiction.  He declined to do so.  In filing his complaint, Plaintiff now asks this Court to act in the role of an appellate court and review the Family Court's dismissal.  This it cannot do, this Court itself lacking subject matter jurisdiction.  See Phifer v. City of New York, 289 F.3d 49, 57 (2d Cir. 2002) (federal court may not review family court determinations

decided after plaintiff was provided "full and fair opportunity to litigate those issues");

Montesano v. New York, Nos. 05 CV 9574(GBD), 05 CV 10624(GBD), 2006 WL 944285,

at *3 (S.D.N.Y. Apr. 12, 2006) (observing that a "plaintiff cannot circumvent the appropriate

state appellate process by bringing a declaratory action, couched in terms of a civil rights

violation, seeking federal review and vacatur of adverse state-court decisions").[7]

Finally, in satisfaction of the fourth prong, the Family Court decisions were rendered

prior to the March 21, 2011 filing date of the complaint .

Having found that the *Rooker-Feldman* doctrine does apply in this case, this Court

must conclude that it lacks subject matter jurisdiction.  Plaintiff's claims against the State

and Chautauqua Defendants will be dismissed.[8]

### 2.    Claims against the Chautauqua Defendants

Even if this Court had subject matter jurisdiction, dismissal would still be

independently called for on those claims against the Chautauqua Defendants because the

claims fall outside the statute of limitations under 42 U.S.C. § 1983.[9]  The statute of

limitations for claims arising under § 1983 in New York is three years.  Shomo v. City of

---

[7]Further supporting this conclusion is Defendant's request that this Court order a change of custody status, a request over which this Court clearly lacks jurisdiction.  See Phifer, 289 F.3d at 57 (claims challenging family court decisions concerning custody, neglect, and visitation rights barred by *Rooker-Feldman* doctrine).

[8]In reaching this conclusion, this Court has also considered Plaintiff's claim against the Chautauqua Defendants, that they improperly defended the collection of funds from his bank account.  To the extent Plaintiff seeks this Court to find the Family Court's rulings concerning that collection unconstitutional, Plaintiff's claim is also dismissed pursuant to the *Rooker-Feldman* doctrine.  Plaintiff could have availed himself of his state appellate remedies.  His failure to do so does not now confer jurisdiction on this Court.

[9]Plaintiff's complaint does not state under what statute he brings his constitutional civil rights claims, but § 1983 provides a civil cause of action for deprivation of federal rights.  See Yip v. Bd. of Trs. of State Univ. of N.Y., No. 03-CV-00959C(SR), 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004) (interpreting constitutional claims as arising under § 1983).  Moreover, Plaintiff's own reply memorandum refers to his claims against the State Defendants as arising under § 1983.  (Docket No. 12.)

New York, 579 F.3d 176, 181 (2d cir. 2009).  A § 1983 claim ordinarily accrues when a plaintiff knows or has reason to know of the harm.  Id.  The proper focus is on the time of the unlawful act and when Plaintiff knows or has reason to know of the injury that is the basis of the action; not when the consequences become painful.  Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).

Plaintiff claims that the Chautauqua Defendants sent a restraining notice against his federal credit union bank account on March 22, 2005, and that thereafter on May 24, 2005 an Execution and Notice was sent against the same account.  (Comp. p. 7.)  Exhibits submitted by Defendants, including copies of the cancelled checks, acknowledge that on March 22, 2005 a property execution and restraining notice was sent to Plaintiff's bank, and that as a result of this notice two checks were forwarded to the Child Support Enforcement Collection Unit in June 2005.  (Steger Aff. ¶ 15.)  Plaintiff claims these acts were illegal and in violation of his Fourth and Eighth Amendment rights.

Regardless of the merits of Plaintiff's contentions, the statute of limitations on those claims has long since run.  The alleged acts occurred in 2005, and Plaintiff's complaint was not filed until early 2011.  Plaintiff does not argue that he had no knowledge of these acts or that these acts were but one of a series of similar notices that were still being sent in 2008.  Instead, Plaintiff argues that the proper statute of limitations for these acts should be that applied to crimes of felony grand larceny in the second degree, which, according to Defendant is seven years.

Plaintiff's argument is without merit.  Plaintiff seeks redress for constitutional violations, not extortion and theft.  Moreover, there is no reason why the statute of limitations should be tolled or that the violations are ongoing.  Accordingly, Plaintiff's claims

13

against the Chautauqua Defendants must be dismissed as untimely.[10]

### 3.    Claims against the State Defendants

Similarly, the claims against the State Defendants are subject to dismissal even if the *Rooker-Feldman* doctrine were not to apply.  It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. See generally, Mireles v. Waco, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).  "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Id. at 10 (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1871)).  This immunity holds fast even against allegations that a judge acted in bad faith or with malice.  Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 1217, 18 L. Ed. 2d 288 (1967).  This immunity has also been found to extend to support magistrates.  Lomtevas v. Cardozo, No. 05-CV-2779, 2006 WL 229908, at *5 (E.D.N.Y. Jan. 31, 2006) (finding support magistrates in family court act as judges and are entitled to absolute immunity).

Plaintiff alleges that the State Defendants improperly dismissed his claims for lack of jurisdiction.  Plaintiff does not assert, however, that, in determining whether they had jurisdiction over his claims, the State Defendants were acting outside their judicial responsibilities.  "In deciding whether absolute judicial immunity applies a court should

---

[10]Plaintiff's complaint also asserts unconstitutional conduct by attorney Jerry D. Hyde for intentionally and in bad faith defending Social Services from Plaintiff's petitions.  Apart from falling outside the applicable statute of limitations, this claim can also be dismissed as lacking any factual specificity sufficient for this Court to find a constitutional violation.  Conclusory allegations like those in Plaintiff's complaint, without more, fail to state a claim for which relief can be granted.  See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).  Additionally, Mr. Hyde was never personally served with a summons and complaint in this matter, nor did he receive process by mail, and this Court finds that dismissal of the claim would also be warranted on this basis.  (Hyde Aff. ¶ 3, Docket No. 4-3.)

consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity."  Arena v. Dep't of Social Servs. of Nassau Cnty., 216 F. Supp. 2d 146, 153 (E.D.N.Y. 2002).   Clearly, deciding whether or not it has jurisdiction, is a fundamental duty of a court that falls well within the scope of its judicial responsibilities. Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978) (quoting Bradley, 80 U.S. at 351) ("Because some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . the scope of the judge's jurisdiction must be constructed broadly where the issue is the immunity of the judge" (internal quotations and citations omitted)).   Indeed, because New York's Family Court is a court of limited jurisdiction, it is necessary that, in carrying out this responsibility, the court first determines whether it is empowered to hear a matter.   See Matter of Suffolk Cnty. Dep't of Social Servs. v. Spinale, 57 A.D. 3d 681, 682-83, 870 N.Y.S.2d 70, 71 (2d Dep't 2008) (noting that family court jurisdiction is limited to those powers specifically enumerated in state constitution and state statutes). In making this determination, Family Court judges do not relinquish judicial immunity. See King v. Rell, No. 3:06-cv-1703(VLB), 2008 WL 793207, at *4 (D. Conn. Mar. 24, 2008) (appellate court's finding that probate court did not have jurisdiction "is not identical to a finding that there was a clear absence of all jurisdiction, the judicial immunity standard"); Gross v. Rell, 485 F. Supp. 2d 72, 79 (D. Conn. 2007) ("A finding of no jurisdiction is quite different from a finding of a clear absence of all jurisdiction.").   Plaintiff has provided nothing else to persuade this Court that the State Defendants were acting in the clear absence of all jurisdiction.  Moreover, the State Defendants had jurisdiction over the underlying family law

dispute.

Plaintiff's claims against the State Defendants will therefore be dismissed.[11]

### 4.    Claims against Ms. Williams

After the other defendants' motions to dismiss are granted, the only remaining Defendant will be Ms. Kellie Williams.  Plaintiff's complaint seeks the imposition of criminal penalties and restitution for property lost.  Defendant alleges no constitutional violations or other grounds on which to base federal jurisdiction.  Having determined that all of Plaintiff's other claims should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state law claim against Ms. Williams.  See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well"); Borrelli v. Sec'y of Treasury, 343 F. Supp. 2d 249, 256 (S.D.N.Y. 2004) (dismissing claims against federal defendants for lack of subject matter jurisdiction and declining to exercise supplemental jurisdiction over claims against municipal defendants).

### IV. CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss is granted.  The Chautauqua Defendants' Motion to Dismiss is also granted.  Finally, this Court will not exercise supplemental jurisdiction over the claims against Ms. Williams.

---

[11]To the extent Plaintiff seeks non-monetary relief, such claims would also be barred under judicial immunity because Plaintiff has alleged no violation of a declaratory decree or that declaratory relief was unavailable.  See Arena, 216 F. Supp. 2d at 154.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Chautauqua Defendants' Motion to Dismiss (Docket No. 4) is GRANTED.

FURTHER, that the State Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

FURTHER, that this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim, which is hereby dismissed under 28 U.S.C. § 1367(c)(3).

FURTHER, that the Clerk of the Court is directed to close this case.


SO ORDERED.

Dated:       February 20, 2012
             Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                    United States District Court